EXHIBIT A



ISSUE:

The amount of refund allowable if Forever Living Products – Japan (FLPJ) is allowed to be a partnership for US income tax purposes in 1991, 1992, 1993, 1994, 1995 and 1996.

FACTS:

After the 1991 through 1996 claims were filed by the taxpayer, a competent authority settlement was reached which affected the 1991 through 1996 returns. Exhibit A-1 contains a copy of the US Competent Authority Disposition Memorandum. Exhibit A-2 contains a copy of the Mutual Agreement Procedure from the Japanese government that was issued to FLPJ. Both agreements state that Japan will decrease the income of FLPJ in 1991 through 1996 for a transfer pricing adjustment as shown in the table below. The US Competent Authority Disposition Memorandum indicates that the net transfer pricing adjustment for US purposes is the difference in the transfer pricing adjustment and the director bonus adjustment made to the Japanese tax return as shown in the table below:

| Year | Transfer Pricing Adjustment: Decrease In FLPJ Income in Yen | Director Bonus Adjustment in Yen | Net Transfer Pricing Adjustment In Yen |
|---|---|---|---|
| 1991 | 946,767,000 | 669,046,000 | 277,721,000 |
| 1992 | 1,666,153,000 | 1,422,070,000 | 244,083,000 |
| 1993 | 1,816,054,000 | 1,778,845,000 | 37,209,000 |
| 1994 | 1,903,598,000 | 1,845,555,000 | 58,043,000 |
| 1995 | 2,070,435,000 | 1,992,459,000 | 77,976,000 |
| 1996 | 2,228,409,000 | 2,143,335,000 | 85,074,000 |

Both agreements also state that Mr. Maughan will be allowed a credit for withholding tax paid on the bonus amounts actually paid that were adjusted by Japan but not until 1997.

The taxpayer provided revised calculations based upon the competent authority settlement to show the income and foreign tax credit changes necessary if FLPJ is allowed to be a partnership for US income tax purposes. The revised calculations are contained in Exhibit A-3.

A partnership return was not required to be filed and was not filed by FLPJ. The taxpayer used limited review financial statements prepared by Arthur Andersen & Company to prepare the revised calculations which are contained in Exhibit A-4. The revised calculations do not make any of the adjustments shown in the competent authority settlement.

The taxpayer provided a schedule detailing the foreign source income as shown on the Form 1116. Exhibit A-5 contains the information provided by the taxpayer.

In 1992, the taxpayer's FLPJ stock was transferred to Maughan Holdings, Inc. which is a U.S. S Corporation that is 100% owned by the taxpayer. The taxpayer has stated that the Maughan Holding's only activity is the ownership of FLPJ stock; therefore, all income shown on Maughan Holdings form K-1 is from FLPJ. The 1993, 1994, and 1996 original returns have statements attached indicating that Maughan Holdings was considered an "other passive activity". However, the statements detailing income or loss from partnership and S Corporation activity show income from Maughan Holdings as nonpassive income. The taxpayer has agreed that FLPJ is not a passive activity in a letter shown in Exhibit A-5.

The taxpayer provided a schedule indicating the foreign taxes paid in Japan for the years 1991 through 1996. The foreign taxes paid in Japan were affected by the Japanese examination and the competent authority settlement. Exhibit A-6 contains the scheduled provided by the taxpayer.

The taxpayer reported dividend income from FLPJ on the original return of $ 2,684,995 in 1993, $ 9,486,694 in 1994, $ 7,196,678 in 1995, and $ 3,915,976 in 1996. The taxpayer reported no dividend income from FLPJ in 1991 and 1992.

**LAW AND ARGUMENT:**

Internal Revenue Code § 701 states that a partnership shall not be subject to income tax. Persons carrying on a business as partners shall be liable for income tax in their separate or individual capacities.

Internal Revenue Code § 702(a) of the Code provides that each partner shall take into account separately his distributive share of the

partnership's taxable income or loss exclusive of items requiring separate computation, his distributive share of the partnership's taxes in section 901 of the Code paid or accrued to foreign countries and to possessions of the United States, and other items of income, gain, or loss deduction, or credit, to the extent provided by the regulations.

## I. COMPUTATION OF FLPJ'S TAXABLE INCOME

Internal Revenue Code § 703(a) states that taxable income of the partnership shall be computed in the same manner as in the case of an individual except that

1. the items described in section 702(a) shall be separately stated, and
2. certain deductions will not be allowed including personal exemptions, charitable contributions, net operating losses, additional itemized deductions, depletion with respect to oil and gas and taxes described in section 901 paid or accrued to foreign countries and to possessions of the United States.

Internal Revenue Code §985 defines functional currency of a qualified business unit as the currency of the economic environment in which a significant part of such unit's activities are conducted and which is used by such unit in keeping its books and records. Internal Revenue Code § 989(a) defines a qualified business unit (QBU) as a separate and clearly identified unit of a trade or business of a taxpayer which maintains separate books and records. FLPJ is a qualified business unit which operates in Japan. The books and records for FLPJ are maintained in Yen which is the functional currency of Japan. The taxpayer's functional currency is the US dollar.

Because the taxpayer and FLPJ have different functional currencies, the taxpayer must look to Internal Revenue Code § 987 to compute the taxable income of FLPJ. Internal Revenue Code § 987 states that any taxpayer having 1 or more qualified business units with a functional currency other than the dollar shall determine taxable income as follows:

1. by computing the taxable income or loss separately for each such unit it its functional currency
2. by translating the income or loss separately computed under paragraph (1) at the appropriate exchange rate, and

3. by making proper adjustments for transfers of property between qualified business units of the taxpayer having different functional currencies.

Proposed Treasury Regulation 1.987-1(a) states that Section 987 applies to a qualified business unit of a taxpayer that

1. has a functional currency that is different from that of the taxpayer, and
2. does not use the dollar approximate separate transaction method of accounting as defined in 1.985-3.

Proposed Treasury Regulation 1.987-1(b)(1) states that a qualified business unit branch must use the profit and loss method of accounting. Under the profit and loss method of accounting, the taxable income or loss of a QBU is generally computed as of the close of the taxable year by:

i. preparing a profit and loss statement from the QBU branch's books and records as recorded in the QBU's functional currency;
ii. except as provided in paragraph (b)(2) of this section, making the adjustments necessary to conform the statement to United States tax principles (the adjusted statement); and
iii. except as provided in paragraph (b)(1)(iv) and paragraph (b)(3) of this section, translating the amount shown on the adjusted statement into the taxpayer's function currency at the weighted average exchange ratio for the taxable year; and
iv. translating the amount shown on the adjusted statement attributable to dividend amounts into the taxpayer's functional currency at the spot rate when the amount is included in the taxpayer's income.

Paragraph (b)(2) states that a QBU's adjusted profit and loss statement does not include income described in section 951(a) and 1293(a)(1). Section 951(a) has to do with income from a controlled foreign corporation. Section 1293(a)(1) has to do with income from a qualified electing fund. The taxpayer does not have any 951(a) or 1293(a)(1) income.

Proposed Treasury Regulation 1.987-1(b)(3) has to do with the appropriate exchange rate for creditable taxes for certain QBU branches of a United States Taxpayer. The separate computations of paragraph (b)(3) ensure that a taxpayer's income reflects the dollar value of its creditable taxes where the taxpayer elects to credit the taxes under

section 901. If a domestic taxpayer elects to credit any creditable tax under section 901, the taxable income or loss attributable to a QBU branch must be computed in the same manner as provided in paragraph (b)(1) of this section, except that the function currency amount of creditable foreign taxes paid or accrued with respect to the QBU branch's income is translated into U.S. dollars at the spot rate on the date the taxes were paid or accrued to the foreign country or possession of the United States. The domestic taxpayer's dollar income or loss includes the dollar tax equivalent amount.

Pursuant to Internal Revenue Code § 987 and Proposed Treasury Regulation 1.987-1, the taxpayer must use the weighted average exchange rate to convert FLPJ's income from Yen to U.S. Dollars. The taxpayer must convert the foreign taxes paid that are creditable pursuant to section 901 using the spot rate on the date the taxes were paid.

When computing the taxable income of FLPJ, the taxpayer failed to make the net transfer pricing adjustment determined by the competent authority. Proposed Treasury Regulation 1.987-1(b)(1)(ii) requires that the taxpayer make adjustments to conform the profit and loss statement to United States tax principles. The transfer pricing adjustment is required to be made pursuant to Internal Revenue Code § 482.

Section 482 states that in the case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses. The purpose of Internal Revenue Code § 482 is to ensure that taxpayers clearly reflect income attributable to controlled transactions, and to prevent the avoidance of taxes with respect to such transactions. Section 482 places a controlled taxpayer on a tax parity with an uncontrolled taxpayer by determining the true taxable income of the controlled taxpayer by determining the true taxable income of the controlled taxpayer. The net transfer pricing adjustment determined by the competent authority is a Section 482 adjustment that must be made in determining FLPJ taxable income.

The exchange rate used by the taxpayer in the revised claim computations was determined to be appropriate pursuant to Internal Revenue Code § 987. The taxable income of FLPJ was recomputed as shown in Exhibit A-7. Pursuant to Internal Revenue Code § 702, the taxpayer's share of FLPJ income is $ 3,332,732 in 1991, $ 8,376,392 in 1992, $ 12,665,042 in 1993, $22,080,755 in 1994, $ 28,911,800 in 1995 and $ 23,954,525 in 1996.

## II. COMPUTATION OF CREDITABLE FOREIGN TAXES

Section 702(a) of the Code provides that, in determining his income tax, each partner shall take into account separately his distributive share of the partnership's taxes, described in Section 901 of the Code, paid or accrued to foreign countries and to possessions of the United States, and other items of income, gain, loss deduction, or credit, to the extent provided by regulations prescribed thereunder.

Internal Revenue Code § 703(b) states in part that any election under section 901 relating to taxes of foreign countries and possessions of the United States shall be made by each partner separately.

Internal Revenue Code § 901(a) of the Code provides that, subject to the applicable limitation of section 904 of the Code, the taxpayer may elect to credit against its United States income tax the amount of any income, war profits, and excess profits taxes paid or accrued to any foreign country plus, in the case of a domestic corporation, the taxes deemed to have been paid under sections 902 and 960 of the Code.

Internal Revenue Code § 901(b)(5) states in part that in the case of a citizen of the United States who is a member of a partnership, the amount of his proportionate share of the taxes of the partnership paid or accrued during the taxable year to a foreign country shall be allowed as a credit subject to the limitation of Section 904.

Because FLPJ has been determined to be a partnership for U.S. income tax purposes, the taxpayer is entitled to a credit under Section 901(a), subject to the limitations under section 904 of the Code, for the distributive share of FLPJ's taxes withheld at the source and income taxes paid to Japan in 1991 through 1996.

The taxpayer has elected to claim a foreign tax credit pursuant to Internal Revenue Code § 901. The foreign taxes paid in Japan were affected by the Japanese audit and then the competent authority

settlement. The taxpayer provided a schedule indicating the creditable foreign taxes paid in Japan for FLPJ. The taxpayer's schedule is shown in Exhibit A-6. The taxpayer's schedule indicates the amounts paid with the original return, amounts paid pursuant to the Japanese examination, and refunds received after the competent authority settlement.

The taxpayer's schedule of foreign taxes paid to Japan does not appear to be correct. After all adjustments were made by the Japanese government pursuant to the Japanese examination and the competent authority settlement, the taxable income in Japan decreased in 1991 through 1996. The schedule provided by the taxpayer does not show an overall decrease in Japanese taxes paid in the years 1993, 1994, 1995 and 1996.

Treasury Regulation 901-2(a)(2) states that a foreign levy is a tax if it requires a compulsory payment pursuant to the authority of a foreign country to levy taxes. A penalty, fine, interest or similar obligation is not a tax. Whether a foreign levy requires a compulsory payment pursuant to a foreign country's authority to levy taxes is determined by principles of U.S. law and not by principles of law of the foreign country.

Treasury Regulation 1.901-2(e)(2) states that an amount is not tax paid to a foreign country to the extent that it is reasonably certain that the amount will be refunded, credited, rebated, abated or forgiven.

Treasury Regulation 1.901-2(e)(5) states in part that an amount paid is not a compulsory payment and is not an amount of tax paid to the extent that the amount paid exceeds the amount of liability under foreign law for tax. An amount paid does not exceed the amount of such liability if the amount paid is determined by the taxpayer in a manner that is consistent with a reasonable interpretation and application of the substantive and procedural provisions of foreign law in such a way as to reduce, over time, the taxpayer's reasonable expected liability for foreign tax. Where foreign tax law includes options or elections whereby a taxpayer's tax liability may be shifted, in whole or part, to a different year or years, the taxpayer's use or failure to use such options or elections does not result in a payment in excess of the taxpayer's liability for foreign tax. An interpretation or application of foreign law is not reasonable if there is actual notice or constructive notice to the taxpayer that the interpretation or application is likely to be erroneous. In interpreting foreign tax law, a taxpayer may generally rely on advise obtained in good faith from competent foreign tax advisors to whom the taxpayer has disclosed the relevant facts.

Pursuant to Treasury Regulations 1.901-2(a)(2) and 2(e)(5) the creditable income taxes for FLPJ paid to Japan have not been computed correctly by the taxpayer. The taxpayer was given notice by both the U.S. and Japanese government's regarding the competent authority settlement. The overall tax paid in Japan by FLPJ should decrease based upon the competent authority settlement. The taxpayer's computation of creditable taxes for FLPJ does not reflect an overall decrease.

The creditable Japanese taxes for FLPJ were recomputed using the information from the taxpayer's computation of FLPJ creditable taxes shown in Exhibit A-6. The tax rate percentage on the amounts assessed pursuant to the Japanese examination were computed by dividing the additional tax paid by the Japanese audit adjustment amount. The computed tax rate was then used to determine the amount of refund the taxpayer was to receive based upon the competent authority settlement. The refund was computed by taking the transfer pricing adjustment and multiplying it by the tax rate computed above. The difference in the refund on the taxpayer schedule and the re-computed amount was used to reduce the total taxes shown on the taxpayer schedule to determine the amount of FLPJ taxes that are creditable pursuant to Internal Revenue Code § 901. Exhibit A-8 contains the computation of creditable Japanese taxes from FLPJ.

It was determined that the taxpayer has creditable Japanese foreign taxes of $ 3,727,332 in 1991, $ 8,274,397 in 1992, $ 12,120,940 in 1993, $ 21,979,199 in 1994, $ 27,531,736 in 1995, and $ 23,041,335 in 1996 pursuant to Section 901.

## III. SECTION 904 LIMITATION

Internal Revenue Code Section 904(a) limits the amount of foreign income taxes that a taxpayer may claim as a credit during a taxable year to the amount of the taxpayer's pre-credit U.S. tax on the taxpayer's foreign source taxable income for the year. The limitation is computed by multiplying the pre-credit U.S. tax liability by the ratio of its foreign source taxable income to its worldwide taxable income. The limitation formula is as follows:

$$\frac{\text{Foreign Source Income}}{\text{Worldwide Income}} \times \text{U.S. Tax Liability}$$

Internal Revenue Code Section 904(b) states that taxable income for an individual shall e computed without any deduction for personal exemptions under Section 151 or 642(b).

Internal Revenue Code Section 904(c) allows the taxpayer to carry any unused foreign tax credits back 2 years and forward 5 years.

Internal Revenue Code Section 904(d) establishes the requirement that the foreign tax credit limitation be calculated separately for 9 different categories of income. The taxpayer has correctly included the income from FLPJ in the general basket as defined in Section 904(d)(1)(I).

## IV. FOREIGN SOURCE INCOME

Internal Revenue Code § 862(a) defines income from sources without the United States.

Internal Revenue Section 862(b) states that income as defined in subsection (a) shall be reduced by expenses, losses and other deductions properly apportioned or allocated thereto, and a ratable part of any expenses losses, or other deductions which cannot definitely be allocated to some item or class of gross income. The remainder, if any, shall be treated in full as taxable income from sources without the United States.

The taxable income from FLPJ is considered to be foreign sourced income pursuant to Internal Revenue Code § 862. The taxpayer has provided a list of foreign source income per the return, as amended or as audited for the foreign tax credit limitation. The list is located in Exhibit A-5.

The section 904 limitation was recomputed based upon audit adjustments and allowable foreign tax credit computations as shown in Exhibit A-9. The 904 limitation amount includes a computation of the foreign source income based upon the examination and Internal Revenue Code 862. The taxpayer has a Section 904 limitation of $ 1,650,467 in 1991, $ 3,244,251 in 1992, $ 7,564,321 in 1993, $ 12,892,900 in 1994, $ 16,672,861 in 1995 and $ 14,965,971 in 1996. Pursuant to Internal Revenue Code § 904(c) the taxpayer has foreign tax credit available to carry back 2 years or forward 5 of $ 2,514,097 in 1991, $ 5,797,072, in 1992, $ 5,578,859 in 1993, $ 10,793,967 in 1994, $ 13,152,317 in 1995 and $ 10,145,793 in 1996.

## V. FLPJ AS A PASSIVE ACTIVITY

Internal Revenue Code § 469 sets for the rules for determining if an activity is a passive activity and the amount of losses allowed from passive activities. Section 469(a) states in part that for any taxable year neither the passive activity loss nor the passive activity credit will be allowed to a taxpayer who is an individual.

Section 469(c) defines a passive activity to be any activity:

A. which involves the conduct of any trade or business, and
B. in which the taxpayer does not materially participate

Section 469(d) sets forth the definition of passive activity loss and passive activity credit. The term "passive activity loss" means the amount (if any) by which

A. the aggregate losses from all passive activities for the taxable year, exceed
B. the aggregate income from all passive activities for such year

Section 469(h) sets for the rules for material participation. Section 469(h)(1) states that a taxpayer shall be treated as materially participating in an activity only if the taxpayer is involved in the operations of the activity on a basis which is

A. regular,
B. continuous, and
C. substantial

The taxpayer has agreed that FLPJ is not a passive activity. Because FLPJ is the only activity in Maughan Holdings, Inc.; Maughan Holdings, Inc. is not a passive activity. While some of the returns for 1991 through 1996 indicate that Maughan Holdings is a passive activity, the taxpayer did not categorize any income from Maughan Holdings as passive on the returns for 1991 through 1996.

## VI. COMPUTATIONS IF FLPJ IS ALLOWED TO BE A PARTNERSHIP

A report has been generated and is shown in Exhibit A-10 indicating the amount of refund that would be allowable to the taxpayer based upon the following:

1. Since FLPJ is a partnership for U.S. income tax purposes, no dividend income from FLPJ should be reported on the return. Taxable income will be reduced by the dividend income reported from FLPJ as follows: $ 2,684,995 in 1993, $ 9,486,694 in 1994, $ 7,196,678 in 1995, and $ 3,915,976 in 1996.

2. Pursuant to Internal Revenue Code § 701, 702, 703, 985, 987 and 482, taxable income will be increased for the taxpayer's pro rata share of income from FLPJ in the following amounts: $ 3,332,732 in 1991, $ 8,376,392 in 1992, $ 12,665,042 in 1993, $ 22,080,755 in 1994, $ 28,911,800 in 1995 and $ 23,954,525.

3. Pursuant to Internal Revenue Code § 702, 901, 904 and 861, the taxpayer is allowed a foreign tax credit of $ 1,650,467 in 1991, $ 3,244,251 in 1992, $ 7,564,321 in 1993, $ 12,892,900 in 1994, $ 16,672,861 in 1995, and $ 14,965,971 in 1996.

   The taxpayer has foreign tax credit carryovers of $ 2,514,097 in 1991, $ 5,797,072 in 1993, $ 5,578,859 in 1994, $10,793,967 in 1995, and $ 10,145,793 in 1996 pursuant to Internal Revenue Code § 904(c).

**CONCLUSION:**

The taxpayer is entitled to a refund of $ ( 149,094) in 1991, $ ( 2,471,419) in 1993, $ (6,048,367) in 1994, $ ( 5,522,255) in 1995, and $ ( 4,722,219) in 1996 pursuant to Internal Revenue Code Sections 701, 702, 703, 985, 987, 989, 482, 901, 904, and 862.

# FAX

**Department of the Treasury**
**Internal Revenue Service**

## Confidentiality Notice

This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or the employee or agent for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication may be strictly prohibited.

If you have received this communication in error, please notify the sender immediately by telephone call and return the communication to the fax number you will be given, then destroy the document(s). Thank you!

***Date*** *September 21, 2005*

*Number of pages including cover sheet* *34*

***TO: Terence Woolston***
***Woolston & Tarter***

***Phone*** *602-532-9199*
***Fax Phone*** *602-532-9193*

***FROM:*** *LaDeana Lucero*
*Internal Revenue Service*
*Mail Stop 4206PHX*
*210 East Earll Drive*
*Phoenix, Arizona 85012*

***Phone*** *(602) 207-8785*
***Fax Phone*** *602-207-8381*

***CC:***

***REMARKS:*** ☐ *Urgent* ☐ *For your review* ☐ *Reply ASAP* ☐ *Please Comment*

I tried to fax these but was unable to get them to go through so I mailed them instead.

Enclosed are the revised calculations for the alternative position to the 30 Day letter we discussed by phone this morning. Let me know if you have any questions.

Deana

SEP 2 2 2005

| Form 4549A | Department of the Treasury - Internal Revenue Service<br>**Income Tax Examination Changes** | Page 1 of 4 |
|---|---|---|

| Name and Address of Taxpayer | SS or EI Number | Return Form No: |
|---|---|---|
| Rex G. & Ruth G. Maughan<br>P. O. Box 29041<br>Phoenix AZ 85038 | 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 | 1040 |
| | Person with whom examination changes were discussed. | Name and Title: |

| 1. **Adjustments to Income** | **Period End** 12/31/1991 | **Period End** 12/31/1992 | **Period End** 12/31/1993 |
|---|---|---|---|
| a. Itemized Deductions | 99,982.00 | 251,292 00 | 299,402.00 |
| b. FLPJ Flow Through Income | 3,332,732.00 | 8,376,392.00 | 12,665,042 00 |
| c. Dividends - FLPJ | | | (2,684,995.00) |
| d. | | | |
| e. | | | |
| f | | | |
| g | | | |
| h. | | | |
| i. | | | |
| j | | | |
| k. | | | |
| l. | | | |
| m | | | |
| n. | | | |
| o | | | |
| p. | | | |
| 2. **Total Adjustments** | 3,432,714.00 | 8,627,684.00 | 10,279,449.00 |
| 3. Taxable Income Per Return or as Previously Adjusted | 26,646,181.00 | 40,957,906.00 | 27,593,041.00 |
| 4. **Corrected Taxable Income** | 30,078,895.00 | 49,585,590 00 | 37,872,490.00 |
| Tax Method | SCHEDULE D | SCHEDULE D | SCHEDULE D |
| Filing Status | Joint | Joint | Joint |
| 5. **Tax** | 9,317,497.00 | 15,364,218.00 | 14,964,623.00 |
| 6. Additional Taxes / Alternative Minimum Tax | | | |
| 7. Corrected Tax Liability | 9,317,497.00 | 15,364,218.00 | 14,964,623.00 |
| 8. **Less Credits** a. Foreign Tax Credit | 1,650,467.00 | 3,244,251.00 | 7,564,690.00 |
| b | | | |
| c. | | | |
| d. | | | |
| 9. **Balance** (Line 7 less total of lines 8a through 8d) | 7,667,030.00 | 12,119,967.00 | 7,399,933.00 |
| 10 Plus Other Taxes a. Tax on Qualified Plans | 93 00 | | |
| b. | | | |
| c. | | | |
| d. | | | |
| 11. **Total Corrected Tax Liability** (line 9 plus line 10a - 10d) | 7,667,123 00 | 12,119,967 00 | $7,399,933.00 |
| 12. Total Tax Shown on Return or as Previously Adjusted | 7,816,217 00 | 11,922,711.00 | 9,871,721.00 |
| 13 Adjustments to: a. Special Fuels Credit | | | |
| b | | | |
| c. | | | |
| 14. **Deficiency-Increase in Tax** or (Overassessment Decrease in Tax) (Line 11 less 12 adjusted by 13) | (149,094 00) | 197,256.00 | (2,471,788.00) |
| 15. Adjustments to Prepayment Credits | | | |
| 16 **Balance Due or (Overpayment)** (Line 14 adjusted by Line 15) ( Excluding interest and penalties) | (149,094.00) | 197,256.00 | (2,471,788.00) |

The Internal Revenue Service has agreements with State tax agencies under which information about Federal tax, including increases or decreases, is exchanged with the States. If this change affects the amount of your State income tax, you should file the State form.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income and do not pay the required tax. The IRS may order backup withholding at 31 percent after four notices have been issued to you over a 120-day period and the tax has been assessed and remains unpaid.

Form **4549A** — Department of the Treasury - Internal Revenue Service

# Income Tax Examination Changes

Page 3 of 4

| Name and Address of Taxpayer | SS or EI Number | Return Form No: |
|---|---|---|
| Rex G. & Ruth G. Maughan<br>P. O. Box 29041<br>Phoenix AZ 85038 | 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 | 1040 |
| | Person with whom examination changes were discussed. | Name and Title: |

| 1. **Adjustments to Income** | **Period End** 12/31/1994 | **Period End** 12/31/1995 | **Period End** 12/31/1996 |
|---|---|---|---|
| a Itemized Deductions | 377,822 00 | 651,454.00 | 601,156.00 |
| b Dividends - FLPJ | (9,486,694.00) | (7,196,678 00) | (3,915,976.00) |
| c FLPJ Flow Through Income | 22,080,755.00 | 28,911,800.00 | 23,954,525.00 |
| d | | | |
| e | | | |
| f | | | |
| g | | | |
| h | | | |
| i | | | |
| j | | | |
| k | | | |
| l | | | |
| m | | | |
| n | | | |
| o | | | |
| p | | | |
| 2. **Total Adjustments** | 12,971,883.00 | 22,366,576.00 | 20,639,705 00 |
| 3. Taxable Income Per Return or as Previously Adjusted | 61,032,926.00 | 52,767,585.00 | 51,172,112.00 |
| 4. **Corrected Taxable Income** | 74,004,809.00 | 75,134,161 00 | 71,811,817.00 |
| Tax Method | TAX RATE | SCHEDULE D | SCHEDULE D |
| Filing Status | Joint | Joint | Joint |
| 5. **Tax** | 29,282,209 00 | 29,699,954.00 | 28,409,638.00 |
| 6. Additional Taxes / Alternative Minimum Tax | | | |
| 7. Corrected Tax Liability | 29,282,209.00 | 29,699,954.00 | 28,409,638.00 |
| 8. **Less Credits** a. Foreign Tax Credit | 12,892,900.00 | 16,672,861.00 | 14,965,971.00 |
| b. General Business Credit | | | 695.00 |
| c. | | | |
| d. | | | |
| 9. **Balance** (Line 7 less total of lines 8a through 8d) | 16,389,309.00 | 13,027,093.00 | 13,442,972.00 |
| 10 Plus Other Taxes a Self Employment Tax | 321,097.00 | 419,631.00 | 228,193.00 |
| b. | | | |
| c. | | | |
| d. | | | |
| 11. **Total Corrected Tax Liability** (line 9 plus line 10a - 10d) | 16,710,406 00 | 13,446,724 00 | $13,671,165.00 |
| 12. Total Tax Shown on Return or as Previously Adjusted | 22,758,773.00 | 18,968,979.00 | 18,393,384.00 |
| 13. Adjustments to: a. Special Fuels Credit | | | |
| b. | | | |
| c. | | | |
| 14 **Deficiency-Increase in Tax** or (Overassessment Decrease in Tax) (Line 11 less 12 adjusted by 13) | (6,048,367 00) | (5,522,255.00) | (4,722,219.00) |
| 15. Adjustments to Prepayment Credits | | | |
| 16 **Balance Due or (Overpayment)** (Line 14 adjusted by Line 15) ( Excluding interest and penalties) | (6,048,367.00) | (5,522,255.00) | (4,722,219.00) |

The Internal Revenue Service has agreements with State tax agencies under which information about Federal tax, including increases or decreases, is exchanged with the States. If this change affects the amount of your State income tax, you should file the State form

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income and do not pay the required tax. The IRS may order backup withholding at 31 percent after four notices have been issued to you over a 120-day period and the tax has been assessed and remains unpaid

# Computation of FLPJ Taxable Income

LL
4/22/2005

| | 1,991 | 1,992 | 1,993 | 1,994 | 1,995 | 1,996 |
|---|---|---|---|---|---|---|
| Income Per Financial Statements | 1,121,605,000 | 2,220,709,000 | 2,873,383,000 | 4,553,184,000 | 5,379,034,000 | 5,173,192,000 |
| Net Competent Authority Adj. | (277,721,000) | (244,083,000) | (37,209,000) | (58,043,000) | (77,976,000) | (85,074,000) |
| Total Income of FLPJ | 843,884,000 | 1,976,626,000 | 2,836,174,000 | 4,495,141,000 | 5,301,058,000 | 5,088,118,000 |
| Currency Exchange Rate | 134.564370 | 126.680520 | 111.177680 | 102.243990 | 94.076590 | 108.826240 |
| Financial Income in US $ of FLPJ | 6,271,229 | 15,603,236 | 25,510,282 | 43,964,843 | 56,348,322 | 46,754,514 |
| Adjustments to US Tax | | | | | | |
| Depreciation - Japan | 302,026 | 306,543 | 290,328 | 369,870 | 1,400,646 | 1,492,002 |
| Depreciation - US | (227,382) | (262,305) | (269,156) | (274,181) | (359,843) | (487,409) |
| Unfunded Returement | 108,283 | 17,666 | 263,605 | 254,861 | 298,725 | 288,763 |
| 263A Prior | (374,775) | (586,083) | (1,659,123) | (1,161,542) | (1,056,415) | (1,171,767) |
| 263A Current | 586,083 | 1,659,123 | 1,161,542 | 1,056,415 | 1,171,767 | 1,357,289 |
| Doubtful Receivables | 0 | 14,604 | 32,605 | (48,756) | 20,398 | (3,336) |
| CSV | 0 | 0 | 0 | 0 | 0 | (287,624) |
| Accrued Vacation | 0 | 0 | 0 | 0 | 0 | (33,383) |
| Total FLPJ Income in US $ | 6,665,464 | 16,752,784 | 25,330,083 | 44,161,510 | 57,823,600 | 47,909,049 |
| X 50% | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| Shareholder % of FLPJ Income | | | | | | |
| to be included in Income | 3,332,732 | 8,376,392 | 12,665,042 | 22,080,755 | 28,911,800 | 23,954,525 |

Rex and Ruth Maughan
Computation of Foreign Source Income and Allowable Foreign Tax Credit
Page 1 of 2

| | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 |
|---|---|---|---|---|---|---|
| Per Return Foreign Source Inc | 1,070,632 | 2,145,152 | 11,048,206 | 11,674,474 | 24,172,212 | 19,651,350 |
| Add/Subtract: Prior Audit Adjustments | 1,187,949 | 315,735 | (549,614) | 334,666 | (838,745) | |
| Add: Amount Omitted from Original Return | | | | 9,104,163 | | |
| Add/Subtract: Current Audit Adjustments | | | | | | |
| Subtract: Dividend Adjustment | | | (2,684,995) | (9,486,694) | (7,196,678) | (3,915,976) |
| Add: FLPJ Partnership Income | 3,332,732 | 8,376,392 | 12,665,042 | 22,080,755 | 28,911,800 | 23,954,525 |
| Subtotal | 5,591,313 | 10,837,279 | 20,478,639 | 33,707,364 | 45,048,589 | 39,689,899 |
| Subtract: Direct Expenses Per Return | | | | 18,482 | | 34,425 |
| Subtract: Certain Itemized Deductions ** | (263,249) | (366,971) | (1,333,910) | (1,141,673) | (2,870,024) | (1,894,431) |
| Foreign Source Income As Adjusted | 5,328,064 | 10,470,308 | 19,144,729 | 32,584,173 | 42,178,565 | 37,829,893 |

| ** = Itemized Deductions Per Report X (Foreign Source Income From Above/Gross Income From All Sources As Adjusted) | | | | | | |
|---|---|---|---|---|---|---|
| Itemized Deductions Per Report | 1,416,166 | 1,679,065 | 2,466,887 | 2,506,552 | 4,786,762 | 3,427,637 |
| Foreign Source Income From Above | 5,591,313 | 10,837,279 | 20,478,639 | 33,707,364 | 45,048,589 | 39,689,899 |
| Gross Income From All Sources Per Report | 30,078,895 | 49,585,590 | 37,872,490 | 74,004,809 | 75,134,161 | 71,811,817 |

Rex and Ruth Maughan
Computation of Foreign Source Income and Allowable Foreign Tax Credit
Page 2 of 2

| | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 |
|---|---|---|---|---|---|---|
| Foreign Tax Credit Limitation per IRC Section 904<br>Foreign Source Income/Gross Income From All Sources X US Tax Liability | | | | | | |
| Foreign Source Income | 5,328,064 | 10,470,308 | 19,144,729 | 32,584,173 | 42,178,565 | 37,829,893 |
| Gross Income From All Sources | 30,078,895 | 49,585,590 | 37,872,490 | 74,004,809 | 75,134,161 | 71,811,817 |
| US Tax Liability Per RAR | 9,317,497 | 15,364,218 | 14,964,623 | 29,282,209 | 29,699,954 | 28,409,638 |
| FTC Limitation | 1,650,467 | 3,244,251 | 7,564,690 | 12,892,900 | 16,672,861 | 14,965,971 |
| Compared to Foreign Taxes Allowed | 4,164,564 | 9,041,304 | 13,143,180 | 23,686,866 | 29,824,731 | 25,111,764 |
| FTC Available to Carry | 2,514,097 | 5,797,054 | 5,578,489 | 10,793,967 | 13,151,869 | 10,145,793 |

| Total Foreign Taxes Paid | | | | | | |
|---|---|---|---|---|---|---|
| | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 |
| Foreign Taxes Per Return or As Adjusted | 437,232 | 766,925 | 1,022,240 | 1,707,667 | 2,293,442 | 2,070,429 |
| Add: Add'l Foreign Taxes Per Audit | 3,727,332 | 8,274,379 | 12,120,940 | 21,979,199 | 27,531,289 | 23,041,335 |
| Total Foreign Taxes Allowed | 4,164,564 | 9,041,304 | 13,143,180 | 23,686,866 | 29,824,731 | 25,111,764 |

| Alternative Minimum Tax - Foreign Tax Credit | | | | | | |
|---|---|---|---|---|---|---|
| Tentative Minimum Tax Per Report | 7,526,766 | 12,324,478 | 11,191,911 | 20,986,235 | 22,091,308 | 20,740,468 |
| 90% of Tentative Minimum Tax | 6,774,089 | 11,092,030 | 10,072,720 | 18,887,612 | 19,882,177 | 18,666,421 |
| FTC Limitation Per Audit | 1,650,467 | 3,244,251 | 7,564,690 | 12,892,900 | 16,672,861 | 14,965,971 |
| Alternative Minimum Tax - FTC | 1,650,467 | 3,244,251 | 7,564,690 | 12,892,900 | 16,672,861 | 14,965,971 |

Rex and Ruth Maughan
Computation of Allowable Foreign Taxes Paid in Japan
Page 1 of 2

| | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 |
|---|---|---|---|---|---|---|
| Japanese Audit Adjustment | 672,753,046 | 1,340,834,968 | 1,613,466,556 | 1,646,066,832 | 1,832,005,231 | 2,127,548,817 |

Add'l Japanese Tax Paid

| | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 |
|---|---|---|---|---|---|---|
| Corporate Tax | 269,307,185 | 600,339,013 | 732,428,320 | 731,795,181 | 814,037,303 | 841,797,400 |
| Inhabitants Tax | 41,143,621 | 77,215,995 | 90,693,076 | 152,261,715 | 172,912,095 | 166,577,600 |
| Enterprise Tax | 75,469,163 | 148,866,098 | 176,279,957 | 300,802,063 | 335,643,814 | 285,964,800 |
| Subtotal of Add'l Tax Paid | 385,919,969 | 826,421,106 | 999,401,353 | 1,184,858,959 | 1,322,593,212 | 1,294,339,800 |

Tax Rate on Additional Taxes Paid (Tax / Audit Adjustment)

| | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 |
|---|---|---|---|---|---|---|
| Corporate Tax | 0.4003 | 0.4477 | 0.4539 | 0.4446 | 0.4443 | 0.3957 |
| Inhabitants Tax | 0.0612 | 0.0576 | 0.0562 | 0.0925 | 0.0944 | 0.0783 |
| Enterprise Tax | 0.1122 | 0.1110 | 0.1093 | 0.1827 | 0.1832 | 0.1344 |

| | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 |
|---|---|---|---|---|---|---|
| Transfer Pricing Adjustment | (946,767,000) | (1,666,153,000) | (1,816,054,000) | (1,903,598,000) | (2,070,435,000) | (2,228,409,000) |

Refund Due to Transfer Pricing Adjustment (Transfer Pricing Adjustment X Tax Rate)

| | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 |
|---|---|---|---|---|---|---|
| Corporate Tax | (378,996,657) | (745,995,347) | (824,392,285) | (846,286,321) | (919,981,720) | (881,704,282) |
| Inhabitants Tax | (57,901,518) | (95,950,408) | (102,080,531) | (176,083,431) | (195,416,065) | (174,474,503) |
| Enterprise Tax | (106,207,937) | (184,984,507) | (198,413,732) | (347,863,279) | (379,326,810) | (299,521,463) |
| Subtotal | (543,106,112) | (1,026,930,262) | (1,124,886,548) | (1,370,233,031) | (1,494,724,595) | (1,355,700,248) |

Compared to Refund Shown on Taxpayer Computation

| | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 |
|---|---|---|---|---|---|---|
| Corporate Tax | (314,189,400) | (624,807,300) | (679,306,500) | (713,849,300) | (776,413,100) | (830,062,100) |
| Inhabitants Tax | (48,118,570) | (127,592,800) | (137,883,400) | (144,617,000) | (157,820,800) | (168,921,600) |
| Enterprise Tax | (117,227,200) | (205,845,800) | (223,893,800) | (234,478,400) | (255,257,900) | (272,192,500) |
| Subtotal | (479,535,170) | (958,245,900) | (1,041,083,700) | (1,092,944,700) | (1,189,491,800) | (1,271,176,200) |

Rex and Ruth Maughan
Computation of Allowable Foreign Taxes Paid in Japan
Page 2 of 2

Difference in Amount Computed and Amount on Taxpayer Computation

| | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 |
|---|---|---|---|---|---|---|
| Corporate Tax | (64,807,257) | (121,188,047) | (145,085,785) | (132,437,021) | (143,568,620) | (51,642,182) |
| Inhabitants Tax | (9,782,948) | 31,642,392 | 35,802,869 | (31,466,431) | (37,595,265) | (5,552,903) |
| Enterprise Tax | 11,019,263 | 20,861,293 | 25,480,068 | (113,384,879) | (124,068,910) | (27,328,963) |
| Subtotal | (63,570,942) | (68,684,362) | (83,802,848) | (277,288,331) | (305,232,795) | (84,524,048) |
| Total Taxes Per Taxpayer | 565,137,032 | 1,116,887,036 | 1,431,380,785 | 2,524,529,372 | 2,895,282,536 | 2,592,025,900 |
| Total Allowable Taxes | 501,566,090 | 1,048,202,674 | 1,347,577,937 | 2,247,241,041 | 2,590,049,741 | 2,507,501,852 |
| | | | | | | |
| Exchange Rate | 134.56437 | 126.68052 | 111.17768 | 102.24399 | 94.07659 | 108.82624 |
| | | | | | | |
| Total Allowable Taxes in $ | 3,727,332 | 8,274,379 | 12,120,940 | 21,979,199 | 27,531,289 | 23,041,335 |